*S. C. Bancroft & N. J. Holden,* for the defendant.
    *C. Sewall,* for the plaintiff.

---

### George W. Stone *vs.* William Segur & others.

Two or more persons who are joined as plaintiffs or defendants in civil actions have only the right collectively to challenge two jurors, under *St.* 1862, *c.* 84; and not to challenge two apiece.

In an action to recover damages for an assault and battery committed by rioters, in taking the plaintiff from a private house and tarring and feathering him, the defendants cannot be allowed to put in evidence declarations of other persons in the crowd, before coming into the plaintiff's presence, and while on their way thither, showing an intention to put certain inquiries to him, but not to inflict personal violence upon him; although some of the defendants were then present. Nor can they be allowed to prove that the plaintiff made certain statements to one of the defendants, in a conversation two hours before the assault upon him, and that the same were repeated to the crowd before they went to the house.

Tort against eleven persons to recover damages for an assault and battery. The defendants appeared by the same counsel and answered jointly.

At the trial in this court, ·before *Gray,* J., the defendants claimed the right to challenge peremptorily two persons each, but were allowed to challenge only two in all.

The plaintiff introduced evidence that he was taken from a private house in Swampscott, on which he was at work, between nine and ten o'clock in the morning of April 15th 1865 by a crowd of men whom the defendants took part with or encouraged, and was forcibly led along the streets, tarred and feathered and otherwise ill-treated. The defendants offered to prove that after the crowd, then including three of the defendants, had assembled and were proceeding to the house where they found the plaintiff, and before they came into his presence,

they used expressions indicating their intention to inquire of the plaintiff as to remarks which he had made about the death of President Lincoln, the news of which arrived early that morning, without anything to show an intention to use personal violence towards the plaintiff. But the evidence was excluded.

The defendants also offered to prove that on the same morning, two hours before the crowd went to this house, one of the defendants had a conversation with the plaintiff about the president's death, which conversation he reported to the rest of the crowd, after hearing which they went to the house. But this evidence was also excluded.

The jury returned a verdict for the plaintiff, with $800 damages, and the case was reported for the determination of the whole court.

*S. H. Phillips,* for the defendants.

*W. D. Northend & S. B. Ives, Jr.,* for the plaintiff.

BIGELOW, C. J. We cannot doubt that the ruling as to the right of the defendants to challenge two only of the jurors called to try the case was in conformity to the true construction of *St.* 1862, *c.* 84. Prior to the enactment of that statute no right of peremptory challenge existed in civil cases. A party objecting to a juror was bound to satisfy the court that he did not stand indifferent in the cause, in order to claim the right to have him set aside. Gen. Sts. *c.* 132, § 29. But it being found by experience that prejudice or partiality might sometimes exist in the mind of a juror which could not be established by legal proof, it was deemed expedient and just that a limited right of peremptory challenge should be given to parties in civil actions. It was therefore provided by *St.* 1862, *c.* 84, that " either party in a civil cause and the defendant in a criminal cause shall, before the trial commences, be entitled to challenge peremptorily two of the jurors from the panel called to try the cause; " that is, that either of the two parties to an action, the plaintiff on the one hand, and the defendant on the other, should have the privilege of exercising this right. We think it clear that the legislature intended to use the words " either party " as indicating the two parties to a cause, regarding each as an inte-

gral unit, whether consisting of one or several persons. Such is the proper and technical signification of the word " party," as used in legal instruments and proceedings. It imports the person or persons in whom a joint legal right, interest or title is vested, or against whom a joint legal liability exists, and is properly applied to one person or to many persons, according as the subject matter of a contract or cause of action relates to or embraces a sole or a joint interest or title or liability. Thus, in a contract with a copartnership, the persons composing the firm form collectively one party to the contract, and in a suit brought by or against the firm on such contract the several copartners constitute the legal party to the action, either as plaintiffs or defendants. So in torts, persons having a joint right or interest which is invaded or destroyed, or who unite in inflicting a wrong or injury on the person or property of another, are in legal contemplation but one party, and are properly designated as such in all suits and proceedings brought to vindicate their right or to obtain redress for the wrong. It was in this sense that the word " party " was used by the legislature in the statute in question. The bias or prejudice against which it was intended to protect parties was not so much that which might arise in the mind of a juror from personal dislike or hatred of individuals who might happen to be plaintiffs or defendants in an action, but rather that which might relate to or grow out of the subject matter in controversy in a suit. This object would be fully attained by giving to the plaintiffs and defendants in an action, without reference to the number of persons joined on one side or the other, each the right to challenge two persons peremptorily. By the exercise of this right, each party to the suit would be enabled to guard against any undue partiality arising out of the subject matter in issue, to the extent of the two challenges allowed by the statute. If the legislature had intended to go farther, and to extend the privilege to each person who was joined as a party to a suit, it would have been expressed in clear and unambiguous language. In the construction of statutes which make innovations on the established course of proceedings in the trial of cases, it is the safer rule to hold that the

egislature did not intend to provide for a greater or more radical change than the strict interpretation of the language of the statute will warrant. Certainly we cannot think that it was the intention of the framers of the statute under consideration, not only to confer the right to challenge two jurors on each party to civil actions, but also to extend the privilege so that the challenges might be multiplied by the number of persons who were joined either as plaintiffs or defendants in such actions. Such an interpretation would be enlarging the meaning of the words beyond their natural import, and would be inconsistent with the construction which has been given to similar provisions in other statutes. *Hayward* v. *French*, 12 Gray, 453. *Brady* v. *Brady*, 8 Allen, 101. The words of the statute respecting the right of challenge in criminal trials are different from those used in regard to civil causes, and are to be interpreted in view of other considerations which are not applicable in the present discussion.

The declarations or statements of persons in the crowd, which went to the plaintiff's house in company with some of the defendants when the assault was made on the plaintiff, were rightly excluded. They were not uttered at the time the acts charged in the declaration were committed, but before the defendants arrived at the plaintiff's house, and while they were going thither. Nor were they made in the plaintiff's presence. They were not therefore part of the *res gestæ*, nor did they tend to explain or justify or give character to the principal transaction which was in issue. They were only declarations of the defendants or their co-conspirators in their own favor, and could not have been admitted in evidence without a violation of elementary principles. The cases cited by the counsel for the defendants bear no analogy to the one at bar. In *Brown* v. *Perkins*, 1 Allen, 98, no evidence was admitted of anything which took place prior to the time when the alleged trespass was committed. In Lord George Gordon's case, 21 Howell's State Trials, 539, the cries and exclamations of the mob in which the defendant took part, and which were made in his presence, were admitted as evidence to inculpate him. But these were strictly

*res gestæ*, and competent to show the nature and character of the acts in which the defendant participated. But in the case at bar the evidence rejected was offered by the defendants as substantive proof in their own favor, with a view to their exculpation. Nor was it in contradiction of anything adduced by the plaintiff in support of his case.

The evidence of a conversation held with the plaintiff two hours before the commission of the assault was also incompetent. It was wholly irrelevant and immaterial. It did not tend in any degree to justify or excuse the trespass, or to mitigate the damages. It was *res inter alios acta*, and had no bearing on any questions in issue before the jury.

*Judgment on the verdict.*